UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARKEL INSURANCE COMPANY
OF CANADA,

       Plaintiff,

v.

PROGRESSIVE MICHIGAN INSURANCE
COMPANY, ALICEN ALWARD as
Personal Representative of the Estate of
Douglas Alward, and GRANGE
INSURANCE COMPANY OF MICHIGAN,

       Defendants.
                                    /

Case No. 1:09-CV-1072

HON. GORDON J. QUIST

## **OPINION**

Plaintiff, Markel Insurance Company of Canada, filed this diversity action against Defendants, Progressive Michigan Insurance Company, Grange Insurance Company of Michigan, and Alicen Alward, Personal Representative of the Estate of Douglas Alward ("the Estate"), under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, to determine which insurer, if any, is responsible for paying personal injury protection ("PIP") benefits under the Michigan No Fault Act, M.C.L. § 500.3101 *et seq.* (the "Act" or "No-Fault Act"), to the Estate in connection with Alward's death. All parties filed motions for summary judgment, with the exception of Grange, which withdrew its motion. On November 3, 2010, the Court *sua sponte* ordered all parties to show cause as to why the Court should not realign the parties and dismiss the action for lack of subject matter jurisdiction. For the reasons set forth below, the Court finds that realignment is necessary and that upon proper alignment, diversity is lost. Accordingly, the Court will dismiss the action.

## BACKGROUND

This case arises out of two separate, yet consecutive and related, accidents that took place in the early morning of July 6, 2009, one or both of which resulted in the death of Clinton County Sheriff's Deputy, Douglas Alward. Alward was traveling north on US 127 on his way to work, riding a 1999 Harley Davidson motorcycle, when he collided with a deer (the "first collision"). Alward was thrown from his motorcycle, an estimated 193 feet, and landed on the roadway just left of the center line. (Ex. 3 to Pl.'s Br. in Supp. of Summ. J. ("Sheriff's Report").). Shortly thereafter, a semi-truck approached the scene. The occupants, Chris Gwilliams and Floyd Wolkins, saw Alward in time to avoid hitting him. They immediately pulled over, exited the truck, and jogged back toward where Alward lay motionless in the roadway. While Wolkins called 911, Gwilliams attempted to alert oncoming traffic. Although Gwilliams successfully diverted the next semi-truck to approach the scene, the third truck did not stop and struck Alward (the "second collision"). Soon thereafter medics arrived and pronounced Alward dead on arrival. (*Id.*) Precisely how much time passed between the first and second collisions is in dispute, but the parties agree that it was a matter of minutes.

To be entitled to PIP benefits under the No-Fault Act, a person must suffer accidental bodily injury, including death, "arising out of the ownership, operation, maintenance or use of a motor vehicle." M.C.L. § 500.3105(1). A motorcycle is not a "motor vehicle." M.C.L. § 500.3101(2)(e). As such, in order for a motorcyclist to claim no-fault benefits, he must be involved in an accident with a motor vehicle. *Utley v. Mich. Mun. Risk Mgmt. Auth.*, 454 Mich. 879, 562 N.W.2d 199 (1997), rev'g *Utley v. Mich. Mun. Risk Mgmt. Auth.*, unpublished per curiam opinion of the Court of Appeals, issued Apr. 26, 1996 (Docket No. 173391) (reversing and remanding to the circuit court for entry of judgment in favor of the insurer because no motor vehicle was "involved" in the

motorcycle accident); *Underhill v. Safeco Ins. Co.*, 407 Mich. 175, 186, 284 N.W.2d 463, 467 (1979). If it is determined that the claimant is eligible for PIP benefits, the next question is from which insurer he is to collect those benefits. For situations in which multiple insurers are involved, as here, the Act lays out a number of priority rules based upon the claimant's status at the time of the accident, such as, an "occupant of a motor vehicle," "not an occupant of a motor vehicle," or "operator or passenger of a motorcycle." M.C.L. §§ 500.3114 and 500.3115.

On November 24, 2009, Markel, the named insurer on the no-fault policy applicable to the semi-truck that struck Alward, filed this declaratory action against Progressive, the named insurer on Alward's personal automobiles; Grange, the named insurer on a no-fault policy belonging to Wayne Alward, Alward's father, with whom Alward was allegedly living at the time of the accident; and the Estate.[1] The Second Amended Complaint alleges that because Alward died as a result of the first collision, he is not entitled to PIP benefits at all because no "motor vehicle" was involved in that accident. (Sec. Am. Compl. ¶ 19.) Alternatively, even if it is determined that Alward was still alive at the time of the second collision and PIP benefits are owed, the other insurers take first priority under M.C.L. §§ 500.3115(1) and 500.3114(1) because Alward was "not an occupant of a motor vehicle," at the time of the second collision. (*Id.* at ¶¶ 20-23.). On the other hand, Progressive and the Estate's motions for summary judgment both argue that, assuming Alward was alive at the time the time of second collision, Markel gets first priority under M.C.L. § 500.3114(5) because, even though he had been thrown from his motorcycle, Alward remained an "operator . . . of a motorcycle" at the time of the second collision. (Progressive's Mot. for Summ. J. at 7-9; Estate's Mot. for Summ. J. at 9-10.)

---

[1] Originally, Markel also named as a defendant Alward's employer, Charter Township of Dewitt Police Department. It later amended the Complaint, dismissing the Police Department and naming the County of Clinton ("the County") in its place. On June 22, 2010, this Court dismissed the County for lack of subject matter jurisdiction.

## ANALYSIS

Jurisdiction in this matter is premised solely on diversity, with the plaintiff, Markel, being a Canadian corporation with its principal place of business in Toronto, Ontario, and all defendants being citizens of Michigan. Where jurisdiction is premised on diversity, "it is the court's responsibility to ensure that the parties are properly aligned according to their interests in the litigation." *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010). "Diversity cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69, 62 S. Ct. 15, 17 (1941). The Sixth Circuit follows the "primary dispute" test in determining whether realignment is necessary. *Aetna Cas. & Sur. Co. v. Dow Chem. Co.,* 44 F. Supp. 2d 870, 875 (E.D. Mich. 1999); *see also United States Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1090 (6th Cir. 1992). Under that test, the parties must "be aligned in accordance with the primary dispute in the controversy, even where a legitimate dispute between the parties supports the original alignment." *Cleveland Hous.*, 621 F.3d at 560.

Where, as here, the dispute is a declaratory judgment action regarding insurance coverage, the parties should generally be realigned such that the insured is on one side and the insurers are on the other. *See e.g., cases cited in Aetna*, 44 F. Supp. 2d at 875. This is so because any dispute that may exist between the insurers (e.g., contribution, indemnification, or, as here, priority), is "secondary and hypothetical" until it is determined that liability exists in the first instance. *Id.* In this case, the priority dispute between Markel and the other insurers – whether, at the time of the second collision, Alward qualified as "not an occupant of a motor vehicle" under M.C.L. § 500.3115(1) or as "an operator . . . of a motorcycle" under M.C.L. § 500.3114(5) – would become moot if it is determined that Alward died as a result of the first collision because no "motor vehicle"

was involved in that accident as required by the No-Fault Act. Thus, although a valid dispute exists between the insurers, the Court finds that the primary dispute in this litigation is whether the Estate is entitled to PIP benefits in the first place. The issue of priority is ancillary to that determination. As to the primary dispute, the insurers are on the same side and realignment is necessary. Upon proper alignment, diversity is lost because, like the Estate, Progressive and Grange are citizens of Michigan.

To contest realignment, Markel asserts only that realignment is not proper in this case because none of the defendants have filed formal counter and/or cross-claims. The Court rejects this argument. Although realignment cases often involve such claims, Markel cites no authority holding that the filing of a formal counter and/or cross-claim is a prerequisite to realignment. *Cf. Cleveland Hous.*, 621 F.3d at 559-60 (referring to the defendant's cross-claim as merely bolstering the conclusion to which the court had already arrived regarding realignment); *United States Fid. & Guar. Co. v. A & S Mfg. Co.,* 48 F.3d 131 (4th Cir. 1995) (no mention of formal counter or cross-claims); *Thomas Solvent Co.*, 955 F.2d at 1087, 1088-90 (mentioning that the defendant insurers had asserted claims against some or all of the insureds "in various actions being litigated in the Michigan and federal courts," but not discussing any such claim as part of the realignment analysis). The Court also rejects the Estate's request that Progressive and Grange be dismissed as dispensable parties in order to preserve diversity. Progressive and Grange are not dispensable parties under Federal Rule of Civil Procedure 19, which governs the issue, because they have an interest in the subject matter that could, as a practical matter, be impaired or impeded by their absence. Fed. R. Civ. P. 19(a)(2).

## CONCLUSION

Upon realignment, the Court finds that diversity is lost and the Court lacks subject matter jurisdiction over this matter. Accordingly, the case will be dismissed.

An Order consistent with this Opinion will issue.


Dated: December 21, 2010                                /s/ Gordon J. Quist
                                                               GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE